# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **KHARYN RAMSAY,** | * |
| *Plaintiff,* | * |
| **v.** | * **No. 1:12-cv-02741-RDB** |
| **SAWYER PROPERTY MANAGEMENT** | * |
| **OF MARYLAND, LLC and JEFFREY** | |
| **TAPPER, ATTORNEY-AT-LAW,** | * |
| *Defendants.* | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO:

## DEFENDANT JEFFREY TAPPER'S MOTION TO DISMISS AMENDED COMPLAINT, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT;

## SAWYER PROPERTY MANAGEMENT OF MARYLAND, LLC'S MOTION TO DIMISS AMENDED COMPLAINT;

## AND

## REQUEST FOR HEARING

Plaintiff, Kharyn Ramsay, by her undersigned counsel, submits this memorandum of law in opposition to the motion to dismiss amended complaint or in the alternative motion for summary judgment filed on behalf of "Defendant Jeffrey Tapper"[1] (ECF 17) and in opposition to the motion to dismiss amended complaint filed by Sawyer Property Management of Maryland, LLC. (ECF 19).

---

[1] The proper name of the defendant is "Jeffrey Tapper, Attorney-at-law" because that is the legal name of the collection agency that is licensed by the State of Maryland Department of Labor, Licensing and Regulation.

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................1

APPLICABLE LEGAL STANDARDS .....................................................................4

ALLEGATIONS OF THE AMENDED CLASS ACTION COMPLAINT ...................8

ARGUMENT....................................................................................................13

    A.    The Plaintiff has Properly Alleged Violations of the Fair Debt
    Collection Practices Act Because Defendants Deceptively
    Modified Court Papers and Failed to Comply with MCALA .............13

        1.    The Modifications of the DC/CV 32 and DC/CV 33
        Forms Violate the FDCPA Because They Deceive
        the Least Sophisticated Consumer Into Ignoring
        Court Orders ...........................................................................16

            a.    The Defendants' Modifications Are False and
            Misleading Representations that Overshadow
            Court Orders and Lull Consumers into Inaction ..........17

            b.    The Defendants' Modifications Are Unfair and
            Unconscionable Because They Are an Affront to
            the Public Policy Against Imprisonment for Debt ........21

            c.    Section 1692e(11) Does Not Require Defendants to
            Modify a Court Order...................................................23

        2.    Defendants Violated the FDCPA by Collecting Debts
        on Behalf of an Unlicensed Collection Agency........................26

        3.    Sawyer is a Debt Collector Governed by the FDCPA ..............29

        4.    Sawyer is Vicariously Liable for the FDCPA Violations
        of Tapper ................................................................................33

    B.      The Plaintiff has Adequately  Alleged Violations of the Maryland Consumer Debt Collection Act and the Maryland Consumer Protection Act ....................................................................35

          1.      Collecting Debts Without a License Violates the MCDCA ......36

          2.      The Maryland Consumer Protection Act Applies to Attorneys  Acting as Debt Collectors ......................................37

CONCLUSION ........................................................................................40

REQUEST FOR HEARING ....................................................................40

## TABLE OF CITATIONS

### CASES

*Ainslie v. Inman*, 265 Va. 347, 577 S.E.2d 246(Va. 2003). ...................24

*Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)....................................4-6

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ........................................................................4-7

*Bicking v. Mitchell Rubenstein & Assocs., P.C.*, 2011 WL 5325674 (E.D. Va. Nov. 3, 2011) ...................................................................18-19

*Blum v. Fisher & Fisher*, 961 F. Supp. 1218 (N.D. Ill. 1997) .................21

*Boarman v. Boarman*, 556 S.E.2d 800, 804 (W. Va. 2001) ...................2

*Boccone v. Am. Express Co.*, 2007 WL 2914909 (D.Md. Oct. 4, 2007)...............29

*Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585 (8th Cir. 2009) ...........4

*Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp. 2d 719 (D. Md. 2011) ................................................................28, 31, 35-37

*Brown v. Lanham Ford Inc.*, 2010 WL 313253 (D.Md. Jan.20, 2010) ................15

*Capps v. U.S. Bank Nat'l Ass'n*, 2009 WL 5149135 (D. Or. Dec. 28, 2009)............5

*Caron v. Charles E. Maxwell, P.C.*, 48 F. Supp.2d 932 (D. Ariz. 1999) ...............35

*Carroll v. State*, 65 Md. 551, 3 A. 29, 29 (Md. 1885) .............................................33

*Casewell v. Cross*, 120 Mass. 545 (1876)..............................................................34

*Chao v. Ballista*, 630 F. Supp. 2d 170(D. Mass. 2009) .......................................6-7

*Charles of the Ritz Distribs. Corp.v. Federal Trade Comm'n*, 143 F.2d 676
(2d Cir. 1944)............................................................................................................18

*Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162
(9th Cir. 2006)...........................................................................................................15

*Clomon v. Jackson*, 988 F.2d 1314 (2d Cir. 1993) ............................................15, 18

*Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)...........................6

*Connolly v. Smugglers' Notch Mgmt. Co.*, 2009 WL 3734123
(D. Vt. Nov. 5, 2009) ..................................................................................................7

*Dickey v. Dickey*, 154 Md. 675, 141 A. 387 (1928) ...................................................2

*Dikun v. Streich*, 369 F.Supp.2d. 781 (E.D.Va.2005) ...........................................15

*DirecTV, Inc. v. Treesh*, 487 F.3d 471 (6th Cir. 2007).............................................4

*Ditty v. CheckRite, Ltd.*, 973 F. Supp. 1320 (D. Utah 1997) .................................35

*Drennan v. Van Ru Credit Corp.*, 950 F. Supp. 858 (N.D. Ill. 1996) ...................19

*Drisol v. Household Credit Servs., Inc.,* 989 S.W.2d 72 (Tex. App. 1998) ...........34

*Edwards v. City of Goldsboro*, 178 F.3d 231 (4th Cir.1999) ...................................4

*Federal Trade Commission v. Standard Education Soc.*, 302 U.S. 112 (1937).....18

*First Interstate Bank of Fort Collins v. Soucie*, 924 P.2d 1200
(Colo. App. 1996). .....................................................................................................35

- iii -

*Florence Mfg. Co. v. J.C. Dowd & Co.*, 2 Cir., 178 F. 73 (1910)...............................18

*Fontell v. Hassett*, 2012 WL 2479543 (D. Md. June 28, 2012) .................27, 32, 37

*Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507 (9th Cir. 1994) ...........................35

*Franceshi v. Mautner-Glick Corp.*, 22 F. Supp.2d 250 (S.D.N.Y. 1998) .........31-32

*Garcia-Contreras v. Brock & Scott, PLLC*, 775 F.Supp.2d 808
(M.D.N.C. 2011)....................................................................................15

*Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055 (9th Cir 2011) .......................18

*Gonzalez v. Napolitano*, 2010 WL 149829 (D.N.J. Jan. 15, 2010)...........................4

*Grant-Fletcher v. Brachfeld Law Group, PC*, 2012 WL 2523094
(D. Md. June 28, 2012)...........................................................................15

*Graziano v. Harrison*, 950 F.2d 107 (3rd Cir. 1991)..............................................14

*Hauk v. LVNV Funding, LLC*, 749 F. Supp. 2d 358
(D. Md. 2010) ................................................................................23, 31, 35

*Heintz v. Jenkins*, 514 U.S. 291, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995)...............31

*Hinterberger v. Catholic Health*, 2008 WL 5114258 (W.D.N.Y.
Nov. 25, 2008) amended, 2009 WL 4042718 (W.D.N.Y. Nov. 19, 2009)...............7

*In re Estate of Bonham*, 817 A.2d 192, 195 (D.C. 2003)...................................3, 22

*In re Initial Pub. Offering Sec. Litig.*, 383 F. Supp.2d 566 (S.D.N.Y.2005) ...........7

*In re Sanofi-Aventis Sec. Litig.*, 774 F. Supp. 2d 549 (S.D.N.Y. 2011) ...................7

*Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168 (11th Cir. 1985) .................14, 17-18, 22

*Johnson v. Riddle*, 305 F.3d 1107 (10th Cir. 2002)................................................15

*Kouabo v. Chevy Chase Bank, F.S.B.*, 336 F. Supp.2d 471 (D.Md. 2004) ...........36

*Lamb v. Javitch, Block & Rathbone, LLP*, 2005 WL 4137786
(S.D. Ohio Jan. 24, 2005) ................................................................................21-22

*LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185 (11th Cir.2010) ............22, 28, 31

*Lee v. BSB Greenwich Mortgage Ltd. P'ship*, 2007 WL 2743435 at \*5
(Conn. Super. Ct. Aug. 31, 2007) ...........................................................................2

*Makarov v.* Commonwealth, 228 S.E.2d 573 (Va. 1976) .......................................2

*Martlsolf v. JBC Legal Group, P.C.*, 2008 WL 275719 (M.D. Pa.
Jan. 30, 2008) ..................................................................................................35

*May v. Warnick*, 227 Md. 77, 175 A.2d 413 (1961) ...............................................37

*McNeal v. Steinberger*, 135 P.2d 490 (Okla. 1943) ............................................34

*McCollough v. Johnson, Rodenburg & Lauinger, LLC,* 637 F.3d 939
(9th Cir. 2011) ............................................................................................18, 20-21

*Morante v. American General Fin. Ctr.*, 157 F.3d 1006 (5th Cir. 1998) ...............34

*Motherway v. Gordon*, 2010 WL 2803052 (W.D. Wash.July 15, 2010)
reconsideration denied, 2010 WL 3061788 (W.D. Wash. July 30, 2010) .......25-26

*Nat'l Organization for Women, Inc. v. Scheidler*, 510 U.S. 249 (1994) .................5

*Newman v. CheckRite California, Ltd,* 912 F. Supp. 1480 (M.D. Ala. 1987) ........35

*Nkengfack v. Homecomings Fin., LLC*, CIV RDB 08-2746
2009 WL 1663533 (D. Md. June 15, 2009) .............................................................4

*Oei v. N. Star Capital Acquisitions, LLC*, 486 F.Supp.2d 1089
(C.D. Cal. 2006) ................................................................................................35

*Patzka v. Viterbo College*, 917 F. Supp. 654 (W.D. Wis. 1996) .......................33-34

*Reichart v. National Credit Systems, Inc.*, 531 F.3d 1002 (2008) .......................18

*Reynolds v. Gables Residential Servs., Inc.*, 428 F. Supp.2d 1260
(M.D. Fla. 2006) ................................................................................................32

*Rosenau v. Unifund Corp.* 539 F.3d 218 (3d Cir. 2008)..........................................19

*Russell v. Equifax A.R.S.*, 74 F.3d 30 (2d Cir.1996) ..............................................36

*Sayyed v. Wolpoff & Abramson*, 485 F.3d 226 (4th Cir.2007) .......................24, 31

*Smith v. U.S.*, 561 F.3d 1090 (10th Cir. 2009) .........................................................7

*Southwestern Bell Tel. Co. v. Wilson*, 768 S.W.2d 755 (tex. App. 1988) ..............34

*Spencer v. Hendersen–Webb, Inc.*, 81 F.Supp.2d 582 (D.Md.1999) ....................36

*Sprinkle v. SB&C, Ltd.*, 472 F. Supp. 2d 1235 (W.D. Wash. 2006).......................15

*State of Washington v. Barklind*, 87 Wash.2d 814, 557 P.2d 314 (1976) ....3, 22-23

*Stein v. Smith*, 270 F. Supp. 2d 157 (D. Mass. 2003) ..............................................4

*Stewart v. Santander Consumer USA Inc.*, 2011 WL 4790756
(D. Md. Oct. 6, 2011) .................................................................................................33

*Swanson v. Southern Oregon Credit Serv., Inc.*, 869 F.2d 1222
(9th Cir. 1988) .............................................................................................................14

*Taylor v. Checkrite, Ltd.*, 627 F. Supp. 415 (S.D. Ohio 1986) ..............................34

*Vt. Nat'l Bank v. Taylor*, 445 A.2d 1122 (N.H. 1982) ..............................................2

*Yake v. Yake*, 170 Md. 75, 183 A. 555 (1936)...........................................................2

*United States v. Nat'l Fin. Services, Inc.*, 98 F.3d 131 (4th Cir. 1996)..............14-15

*Winemiller v. Worldwide Asset Purchasing, LLC*, 2011 WL 1457749
(D. Md. Apr. 15, 2011) ...............................................................................................33

*Zevgolis v. Greenberg Law Firm, P.C.*, 2011 WL 251024
(E.D. Va. Jan. 26, 2011)........................................................................................24-35

## RULES STATUTES AND CONSTITUTIONAL PROVISIONS

Fed. R. Civ. Proc. 8..................................................................................................6

Fed. R. Civ. Proc. 11 ...................................................................5

Fed. R. Civ. Proc. 15 ...................................................................4

Fed. R. Civ. Proc. 56 ...............................................................7-8

15 U.S.C. §1692(a) ......................................................................13

15 U.S.C. §1692(b) ......................................................................13

15 U.S.C. §1692(e) ......................................................................14

15 U.S.C. §1692a(3) .......................................................................8

15 U.S.C. §1692a(5) .......................................................................8

15 U.S.C. §1692a(6) .....................................................................29

15 U.S.C. §1692a(6)(F)(i) ............................................................32

15 U.S.C. §1692a(6)(F)(iii) ..........................................................29

15 U.S.C. §1692e ....................................................................16-17

15 U.S.C. §1692e(5) .....................................................................28

15 U.S.C. §1692e(10) ..............................................................16, 19

15 U.S.C. §1692e(11) ....................................................................23

15 U.S.C. §1692e(15) ..............................................................16, 20

15 U.S.C. §1692f..........................................................16, 21-22, 25

15 U.S.C. §1692i...........................................................................35

15 U.S.C. §1692k .........................................................................14

1977 U.S.C.C.A.N. 1695 .......................................................17, 29-30

1986 U.S.C.C.A.N. 1752 ...............................................................39

FTC Official Staff Commentary, 53 Fed. Reg. 50097
(Dec. 13, 1988)........................................................................17, 20, 30, 32

Ala. Const. art. I, § 20 ...........................................................................2

Alaska Const. art. I, § 17 .......................................................................2

Ariz. Const. art. II, § 18 .........................................................................2

Cal. Const. art. I, § 10............................................................................2

Colo. Const. art. II, § 12 .........................................................................2

Del. Code Ann. tit. 10, § 5052 ...............................................................2

D.C. Code § 15-320(c) ............................................................................2

Fla. Const. art. I, § 11 ............................................................................2

Ga. Const. art. I, § 1, ¶ XXIII ................................................................2

Haw. Const. art. I, § 19...........................................................................2

Idaho Const. art. I, § 15 .........................................................................2

Ill. Const. art. I, § 14..............................................................................2

Ind. Const. art. I, § 22 ...........................................................................2

Iowa Const. art. I, § 19 ..........................................................................2

Kan. Const. Bill of Rights, § 16 .............................................................2

Ky. Const. Bill of Rights, § 18................................................................2

La. Rev. Stat. § 13:4281 .........................................................................2

Me. Rev. Stat. tit. 14, § 3701 ..................................................................2

Md. Code Ann., Bus. Reg. § 7-101 .....................................................3, 26

Md. Code Ann., Bus. Reg. § 7-301(a)....................................................27

Md. Code Ann., Com. Law, § 14-201(b) ..................................................... 9

Md. Code Ann., Com. Law, § 14-201(c) ..................................................... 8

Md. Code Ann., Com. Law, § 14-202(8) ...................................................36

Md. Code Ann., Com. Law, § 13-301(14) ...........................................36-37

Md. Const, art. III, § 38 .............................................................................. 1

Md. Rule 3-633 ......................................................................................9-10

Mass. Gen. Laws ch. 224, § 6 ..................................................................... 2

Mich. Const. art. I, § 21 .............................................................................. 2

Minn. Const. art. I, § 12 .............................................................................. 2

Miss. Const. art. III, § 30 ........................................................................... 2

Mo. Const. art. I, § 11; ................................................................................ 2

Mont. Const. art. II, § 27 ............................................................................ 2

Neb. Const. art. I, § 20 ............................................................................... 2

Nev. Const. art. I, § 14 ............................................................................... 2

N.J. Const. art. I, § 13 ................................................................................ 2

N.M. Const. art. II, § 21 ............................................................................. 2

N.Y. Debt & Cred. Law §§ 100 through 111 (McKinney) .......................... 2

N.C. Const. art. I, § 28 ............................................................................... 2

N.D. Const. art. I, § 15 ............................................................................... 2

Ohio Const. art. I, § 15 .............................................................................. 2

Okla. Const. art. II, § 13 ............................................................................ 2

Or. Const. art. I, § 19 ...................................................................2

42 Pa. Con. Stat. § 5108 ..............................................................2

R.I. Const. art. I, § 11 ................................................................2

S.C. Const. art. I, § 19 ................................................................2

S.D.. Const. art. VI, § 15 ............................................................2

Tenn. Const. art. I, § 18 ..............................................................2

Tex. Const. art. I, § 18 ................................................................2

Utah Const. art. I, § 16 1 .............................................................2

Vt. Const. ch. II, § 40 .................................................................2

Wash. Const. art. I, § 17 .............................................................2

Wis. Const. art. I, § 16; WYo. Const. art. I, § 5. .......................2

# INTRODUCTION

This is a consumer protection putative class action lawsuit involving allegedly unlawful debt collection practices. The Plaintiff and the class she seeks to represent are consumer debtors who allege that the Defendants violated the federal Fair Debt Collection Practices Act ("FDCPA"), the Maryland Consumer Debt Collection Act ("MCDCA") and the Maryland Consumer Protection Act ("MCPA") in the manner by which they attempted to collect on the consumers' debts. Defendants' debt collection practice — and the source of Plaintiff's Amended Class Action Complaint — is the filing of lawsuits in Maryland state court and use of the Maryland Rules to obtain post judgment debtor examinations.

This lawsuit challenges the manner in which the Defendants seek debtor's examinations after obtaining judgments against consumers. Under normal circumstances these examinations create problems because a debtor can be held in contempt of court for failure to appear for a debtor's examination. Debtors frequently fail to appear at debtor's examinations because the notice is in obtuse legalese or they have no means of transportation to the examination site.

The Maryland Constitution prohibits imprisonment for debt. *See* Md. Const, art. III, § 38 ("no person shall be imprisoned for debt, but a valid decree of a court of competent jurisdiction or agreement approved by decree of said court for the support of a spouse or dependent children, or for the support of an illegitimate child or children, or for alimony (either common law or as defined by

statute), shall not constitute a debt within the meaning of this section"). Maryland case law dating back to the 1920s and 1930s also establishes that a person cannot be imprisoned for contempt for disobeying an order to pay money pursuant to a decree based upon a simple contract or debt. *See Yake v. Yake*, 170 Md. 75, 183 A. 555, 557 (1936) ("This court has decided that contractual obligations for the payment of money cannot be so enforced by courts of equity, for such a procedure might eventually result in an imprisonment for debt."); *Dickey v. Dickey*, 154 Md. 675, 141 A. 387, 390 (1928) ("a party defendant, who has been brought into court under process of contempt to compel the performance of [a decree in equity to pay a debt], may not be imprisoned").[2]

---

[2] In fact, imprisonment for debt is prohibited in all of the states and the District of Columbia. *See* Ala. Const. art. I, § 20; Alaska Const. art. I, § 17; Ariz. Const. art. II, § 18; Cal. Const. art. I, § 10; Colo. Const. art. II, § 12; *Lee v. BSB Greenwich Mortgage Ltd. P'ship*, 2007 WL 2743435 at *5 (Conn. Super. Ct. Aug. 31, 2007); Del. Code Ann. tit. 10, § 5052; D.C. Code § 15-320(c); Fla. Const. art. I, § 11; Ga. Const. art. I, § 1, ¶ XXIII; Haw. Const. art. I, § 19; Idaho Const. art. I, § 15; Ill. Const. art. I, § 14; Ind. Const. art. I, § 22; Iowa Const. art. I, § 19; Kan. Const. Bill of Rights, § 16; Ky. Const. Bill of Rights, § 18; La. Rev. Stat. § 13:4281 (abolishing writ of *capias ad satisfaciendum*); Me. Rev. Stat. tit. 14, § 3701; Mass. Gen. Laws ch. 224, § 6 (prohibiting arrest on execution in civil action unless creditor proves that debtor intends to leave the state); Mich. Const. art. I, § 21; Minn. Const. art. I, § 12; Miss. Const. art. III, § 30; Mo. Const. art. I, § 11; Mont. Const. art. II, § 27; Neb. Const. art. I, § 20; Nev. Const. art. I, § 14; *Vt. Nat'l Bank v. Taylor*, 445 A.2d 1122 (N.H. 1982) (noting that New Hampshire repealed the last of its statutes authorizing imprisonment for debt n 1971, although writs of *capias* can still be used in some circumstances); N.J. Const. art. I, § 13; N.M. Const. art. II, § 21; N.Y. Debt & Cred. Law §§ 100 through 111 (McKinney) (providing procedure for insolvent debtor to petition for exemption from arrest and imprisonment); N.C. Const. art. I, § 28; N.D. Const. art. I, § 15; Ohio Const. art. I, § 15; Okla. Const. art. II, § 13; Or. Const. art. I, § 19; 42 Pa. Con. Stat. § 5108; R.I. Const. art. I, § 11; S.C. Const. art. I, § 19; S.D.. Const. art. VI, § 15; Tenn. Const. art. I, § 18; Tex. Const. art. I, § 18; Utah Const. art. I, § 16; Vt. Const. ch. II, § 40; *Makarov v.* Commonwealth, 228 S.E.2d 573 (Va. 1976) (although there is no state constitutional prohibition, "[I]t is nevertheless established in this state that a person may not be imprisoned, absent fraud, for mere failure to pay a debt arising from contract or for mere failure to pay a judgment for a debt founded on contract. . . . [I]mprisonment of poor debtors offends fundamental principles of justice in today's ordered society."); Wash. Const. art. I, § 17; *Boarman v. Boarman*, 556 S.E.2d 800, 804 (W. Va. 2001) ("West Virginia has abandoned the Dickensian notion of 'debtor's prison.'"); Wis. Const. art. I, § 16; WYo. Const. art. I, § 5.

Sawyer Property Management of Maryland, LLC ("Sawyer") is engaged in the business of collecting debts alleged to be due another in the State of Maryland and, therefore, was required to be licensed under by the Maryland Collection Agency Licensing Act ("MCALA"), Md. Code Ann., Bus. Reg. § 7-101, *et seq,*. Sawyer failed to obtain a license and, with the assistance of its agent "Jeffrey Tapper, Attorney-at-law" (Tapper) improperly filed dozens collection lawsuits and obtained judgments against the Plaintiff and the class she seeks to represent. After obtaining these judgments, Defendants made unauthorized modifications to District Court forms used to obtain post judgment oral examinations of the judgment debtors. In those instances where the judgment debtors failed to appear for the oral examinations, the Defendants sought body attachments and had the Plaintiff and the members of the class she seeks to represent arrested and imprisoned.

Courts that have addressed the issue, such as the District of Columbia Court of Appeals, have held that "contempt in general, and imprisonment in particular, are not appropriate means to enforce a money judgment." *In re Estate of Bonham*, 817 A.2d 192, 195 (D.C. 2003). *See also State of Washington v. Barklind*, 87 Wash.2d 814, 557 P.2d 314, 318 (1976) ("It is elementary that personal liberty transcends the obligation to pay a monetary sum in most circumstances."). Despite this strong and uniform public policy, Sawyer and Tapper have misused the Maryland judicial process to imprison Maryland consumers in an effort to assist their illegal debt collecting activities.

As discussed more fully below, the Amended Class Action Complaint adequately alleges causes of actions under the FDCPA, MCDCA and the MCPA entitling the Plaintiff and the class she seeks to represent to actual and statutory damages.

## APPLICABLE LEGAL STANDARDS

With respect to the motion to dismiss, the Defendants bear the burden of persuading the Court that the Plaintiff has failed to state a claim. *See, e.g., DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Gonzalez v. Napolitano*, 2010 WL 149829, *2 (D.N.J. Jan. 15, 2010). The Defendant's burden is a "heavy" one -- much heavier than on a motion for summary judgment. *See, e.g., Stein v. Smith*, 270 F. Supp. 2d 157, 164 (D. Mass. 2003). All factual allegations in the Class Action Complaint must be assumed true. *See, e.g., Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In ruling on a motion to dismiss, "the factual allegations in the Plaintiff's complaint must be accepted as true and those facts must be construed in the light most favorable to the plaintiff." *Nkengfack v. Homecomings Fin., LLC*, 2009 WL 1663533 (D. Md. June 15, 2009) (*quoting Edwards v. City of Goldsboro*, 178 F. 3d 231, 244 (4th Cir.1999). Thus, the facts must be construed in the light most favorable to the Plaintiff, and all reasonable inferences must be drawn in the Plaintiff's favor. *See, e.g., Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009) (holding, post-*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), that a district court erred by "ignor[ing] reasonable inferences supported by the facts

alleged" and by drawing "inference in [defendants'] favor"). Additionally, on a motion to dismiss, courts must "presume that general allegations embrace those specific facts that are necessary to support the claim." *Nat'l Organization for Women, Inc. v. Scheidler*, 510 U.S. 249, 256 (1994); *see also Capps v. U.S. Bank Nat'l Ass'n*, 2009 WL 5149135, *1 (D. Or. Dec. 28, 2009) (re-stating this rule after *Iqbal*). Federal Rule of Civil Procedure 11 also specifically contemplates and permits allegations made on information and belief. *See* Fed. R. Civ. Proc. 11(b) (3) & Advisory Committee Notes to the 1993 Amendments.

To the extent that the Supreme Court suggested that "conclusory" allegations need not be taken as true, it closely limited its holding to allegations that simply mirror the elements of a cause of action without any further factual amplification. *See, e.g., Iqbal*, 129 S. Ct. at 1951. Every complaint includes at least some conclusory language because all complaints -- by necessity -- recite the legal elements of the plaintiff's claims. Neither *Twombly* nor *Iqbal* provides any support for an argument that a complaint may be dismissed simply because it includes some conclusory statements. Instead, both cases make clear that in order to justify dismissal, a defendant must satisfy *Twombly* and *Iqbal*'s second step by showing that the plaintiff's claim is so far-fetched as to be implausible. *See, e.g., Iqbal*, 129 S. Ct. at 1951 (holding that the plaintiff's complaint should have been dismissed because it was implausible, not because it contained conclusory allegations); *Twombly*, 550 U.S. at 564–69 (same).

The Supreme Court's adoption of "plausibility" pleading did not impose a

radical new regime on lower courts. A plaintiff need not show that his theory of liability is more likely to be true than an alternative explanation offered by the defendant or imagined by the court. To impose such a requirement would create a preponderance standard at the pleading stage, which the Supreme Court explicitly rejected. *Twombly*, 550 U.S. at 556 (plausibility is not a "probability requirement," and the defendant cannot prevail even by showing that the plaintiff is unlikely to succeed, that his claims are "improbable," or that recovery is "very remote").

Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). To be entitled to a dismissal based upon implausibility, a defendant must show that there is an alternative explanation that is much more obvious and plausible than the plaintiffs. *See Chao v. Ballista*, 630 F. Supp. 2d 170, 177 (D. Mass. 2009).

A court may not dismiss a complaint because it disbelieves the plaintiff's factual allegations. *See Twombly*, 550 U.S. at 556. In fact, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and that a recovery is very remote and unlikely." *Id.* (internal quotation marks omitted).

Thus, notice pleading remains the rule, *see, e.g., Chao v. Ballista*, 630 F. Supp. 2d 170, 177 (D. Mass. 2009), and the principal purpose of Rule 8 is to

provide adequate notice to the defendant so that he or she may prepare an answer. *See, e.g., Connolly v. Smugglers' Notch Mgmt. Co.*, 2009 WL 3734123, *3 (D. Vt. Nov. 5, 2009) (complaint met the "specificity standard" where it "put the defendant on notice of the charges against it"). Neither *Twombly* nor *Iqbal* imposed a heightened fact-pleading regime. *See, e.g., Smith v. U.S.*, 561 F.3d 1090, 1103 (10th Cir. 2009) ("heightened fact pleading" was "expressly rejected"). As explained in *Hinterberger v. Catholic Health*, 2008 WL 5114258 (W.D.N.Y. Nov. 25, 2008) amended, 2009 WL 4042718 (W.D.N.Y. Nov. 19, 2009), "Rule 8 of the Federal Rules of Civil Procedure does not require heightened fact pleading, but merely requires the plaintiff to 'give the defendant fair notice of [plaintiff's] claim and the grounds upon which it rests.'" *Id.* at *2, quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007).

The task of the court in ruling on a motion to dismiss is to "assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *In re Sanofi-Aventis Sec. Litig.*, 774 F. Supp. 2d 549, 559 (S.D.N.Y. 2011), quoting *In re Initial Pub. Offering Sec. Litig.*, 383 F. Supp.2d 566, 574 (S.D.N.Y.2005) (internal quotation marks and citation omitted).

With respect to a motion for summary judgment, Rule 56 provides that a court may grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving

party is entitled to judgment as a matter of law."Fed. R. Civ. Proc. 56(c).

## **ALLEGATIONS OF THE AMENDED CLASS ACTION COMPLAINT**

In her Amended Class Action Complaint, Kharyn Ramsay seeks redress on behalf of herself and a similarly situated class of individual consumers for the debt collection practices of Sawyer and Tapper. *See* ECF 15 at ¶1.

Every debt subject to this dispute is a "debt" as that term is defined by 15 U.S.C. § 1692a(5) of the FDCPA, because the debts arise from rental agreements entered into primarily for personal, family or household purposes. *See* ECF 15 at ¶3. For the same reason, each debt subject to this dispute is also alleged to be a "consumer transaction" as that term is defined by Md. Code Ann., Com. Law, § 14-201(c) of the MCDCA. *See* ECF 15 at ¶4.

Kharyn Ramsay is and was at all times relevant, a "consumer" within the meaning of 15 U.S.C. §1692a(3), because the Defendants sought to collect from her an alleged debt incurred for non-business purposes. *See* ECF 15 at ¶9. For the same reason, Kharyn Ramsay is also a "person" as that term is defined by the MCDCA and the MCPA. *Id.*

The amended complaint alleges that Sawyer is "a rental agent for various landlords throughout Maryland including, without limitation, SRH Woodmoor LLC, the owner of a rental property known as 'Gwynn Oaks I.'" *See* ECF 15 at ¶10. Sawyer is alleged to engage in the business of collecting debts alleged to be due another in the State of Maryland, and to use the United States Mail in furtherance of its collection of debts alleged to be due another. *Id.*

Sawyer is not licensed as a collection agency with the State of Maryland, Department of Labor, Licensing and Regulation, and is not exempt from collection agency licensing because it is not a licensed real estate broker or an individual acting on behalf of a licensed real estate broker. *Id.*

Tapper is alleged to be a Maryland sole proprietorship law firm engaged in the business of collecting debts alleged to be due another in the State of Maryland. *See* ECF 15 at ¶11. Tapper uses the United States Mail in furtherance of its collection of debts alleged to be due another and holds an active collection agency license with the State of Maryland, Department of Labor, Licensing and Regulation. *Id.*[3]

Both Defendants are alleged to have acted as a "collector" and "person" as those terms are defined by Md. Code Ann., Com. Law, § 14-201(b) of the MCDCA. *See* ECF 15 at ¶14.

The Plaintiff alleges that the Defendants routinely commandeer the criminal justice system to collect debts through deceptive practices. Sawyer retained Tapper to bring collection lawsuits in the District Court of Maryland, many of which result in judgments by default. *See* ECF 15 at ¶¶ 18-19. Once these judgments are entered, Defendants rely almost exclusively on Maryland Rule 3-633(b) to attempt to obtain an oral examination of the judgment debtor before a District Court judge. *See* ECF 15 at ¶ 20.

---

[3] *See also* **Exhibit 1** attached to the *Declaration of E. David Hoskins in Opposition to Motion to Dismiss or in the Alternative for Summary Judgment*, ECF 16-2.

A judgment creditor wishing to obtain an oral examination is required to complete form "DC/CV 32." *See* ECF 15 at ¶ 21; ECF 1-1. The judgment creditor completes the top part of the form, which is titled "Request for Order Directing Defendant to Appear for Examination in Aid of Enforcement of Judgment (3-633) (Oral)." *Id.* A clerk of the District Court reviews the requests and completes the lower half of the form, which is titled "Order of the Court." *Id.* After approval by the court a judge of the District Court's signature stamp is applied to the form. *Id.* At this point the DC/CV 32 becomes an Order of the District Court of Maryland directing that the judgment debtor appear at a scheduled time for an oral examination before a judge of the District Court. *See* ECF 15 at ¶ 22.

If a judgment debtor fails to appear for the oral examination, the judgment creditor can obtain a Show Cause Order for Contempt, pursuant to Maryland Rule 3-633. *See* ECF 15 at ¶ 23.

A judgment creditor wishing to obtain a Show Cause Order for Contempt is required to complete form "DC/CV 33." *See* Class Action Complaint ECF 15 at ¶ 24; ECF1-2. The judgment creditor completes the top part of the form, which is titled "Request for Show Cause Order for Contempt (3-633) (SHOR)." *Id.* A clerk of the District Court reviews the request and completes the lower half of the form, which is titled "Show Cause Order for Contempt." *Id.* After approval by the court a judge of the District Court's signature stamp is applied to the form. *Id.* At this point the DC/CV 33 becomes an Order of the District Court of Maryland directing

that the judgment debtor appear at a scheduled time to show cause why he or she should not be held in contempt for failure to appear for the ordered oral examination. *See* ECF 15 at ¶ 25.

If the judgment debtor fails to appear at the show cause hearing, a judgment creditor can request that the Court issue an "Attachment for Contempt" directing any "Peace Officer" to attach the body of the judgment debtor by placing the judgment debtor under arrest, and delivering the judgment debtor to a judicial officer for a determination of the amount of bond, if any, that will be required before the judgment debtor may be released. *See* ECF 15 at ¶ 26. Sometimes a judgment creditor requests that the Court set a penalty amount of the bond equal to the amount of the judgment allegedly owed the Judgment Creditor. *See* ECF 15 at ¶ 27.

Sawyer and Tapper confuse judgment debtors by adding the following language to the top of the DC/CV 32 form:

> THIS COMMUNICATION IS FROM A DEBT COLLECTOR. IT IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE

*See* ECF 15 at ¶ 28; ECF 1-3.

This statement is false because the DC/CV 32 served upon the judgment debtor is not a communication from a debt collector. *See* ECF 15 at ¶ 29. Rather, it is an order of the District Court. *Id.*

These unauthorized changes to the DC/CV 32 form result in judgment

debtors sued by Sawyer and Tapper frequently failing to attend the ordered oral examinations. *See* ECF 15 at ¶ 30. These unauthorized changes to the DC/CV 32 form are misleading and confuse judgment debtors into thinking that the document is a communication from a debt collector, as opposed to a court's order. *See* ECF 15 at ¶ 31.

Sawyer and Tapper similarly confuse judgment debtors by adding the following language to the top of the DC/CV 33 form:

> THIS COMMUNICATION IS FROM A DEBT COLLECTOR. IT IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE

*See* ECF 15 at ¶ 32; ECF 1-4. This statement is false because the DC/CV 33 served upon the judgment debtor is a communication from the District Court and is not a communication from a debt collector. *Id.* at ¶ 33.

These unauthorized changes to the DC/CV 33 form also result in judgment debtors sued by Sawyer and Tapper frequently failing to attend the ordered show cause hearings. *Id.* at ¶ 34. The changes to the DC/CV 33 form are misleading and confuse judgment debtors into thinking that the document is a communication from a debt collector, as opposed to a court's order. *Id.* at ¶ 35.

This course of conduct has resulted in the arrest of Kharyn Ramsay and the issuance of body attachments against the class she wishes to represent when they failed to appear in response to Show Cause Orders issued by the District Courts on DC/CV 33 forms that had been modified by Defendants in the manner

described above. *See* ECF 15 at ¶ 36.

Kharyn Ramsay was arrested on April 23, 2012, by the Baltimore County Sheriff's Office at 4:30 PM and released on her own recognizance at 6:15 PM. *Id.* at ¶ 37. Other potential members of the class faced similar imprisonment. *See* ECF 15 at ¶¶ 39-107. One of the more egregious incidents involved "Consumer BBB" who was arrested on April 19, 2012, and charged with civil contempt, and had bail set at $2,500, an amount approximately $100 less than the amount of the judgment against "Consumer BBB." *Id.* at ¶ 54. In another incident, "Consumer NE," a single mother who lives only with her children, was arrested on June 30, 2011, for failing to appear at a show cause hearing. *Id.* at ¶ 90.

## ARGUMENT

### A. THE PLAINTIFF HAS PROPERLY ALLEGED VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT BECAUSE DEFENDANTS DECEPTIVELY MODIFIED COURT ORDERS AND FAILED TO COMPLY WITH MCALA.

In enacting the FDCPA, the United States Congress found that "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," which "contribute to the number of personal bankruptcies, marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a). Congress also found that existing laws and procedures for redressing debt collection activities were inadequate to protect consumers. 15 U.S.C. § 1692(b). Congress enacted the FDCPA to eliminate abusive debt collection practices by debt collectors, to ensure that those debt

collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote uniform State action to protect consumers against debt collection abuses. 15 U.S.C. § 1692(e).

The FDCPA is a comprehensive statute that prohibits a catalog of activities in connection with the collection of debts by third parties. The FDCPA imposes civil liability on any person or entity that violates its provisions and establishes general standards of debt collector conduct, defines abuse, and provides for specific consumer rights. 15 U.S.C. § 1692k. The operative provisions of the FDCPA declare certain rights to be provided to or claimed by debtors, forbid deceitful and misleading practices, prohibit harassing and abusive tactics, and proscribe unfair or unconscionable conduct, both generally and in a specific list of disapproved practices.

The FDCPA is a strict liability statute that provides for actual or statutory damages upon the showing of one violation. The Fourth Circuit and other federal courts have held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of the "least sophisticated consumer." *United States v. Nat'l Fin. Services, Inc.*, 98 F.3d 131 (4th Cir. 1996); *Clomon v. Jackson*, 988 F.2d 1314 (2d Cir. 1993); *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168 (11th Cir. 1985); *Graziano v. Harrison*, 950 F.2d 107 (3rd Cir. 1991); *Swanson v. Southern Oregon Credit Serv., Inc.*, 869 F.2d 1222 (9th Cir. 1988). The purpose of the least-sophisticated consumer standard "is to ensure that the

FDCPA protects all consumers, the gullible as well as the shrewd." *Nat'l Fin. Services, Inc.*, 98 F.3d at 136 (quoting *Clomon v. Jackson*, 988 F.2d at 1318).

Because the FDCPA is a remedial statute, it is construed liberally in favor of the debtor. *See, e.g., Garcia-Contreras v. Brock & Scott, PLLC*, 775 F. Supp.2d 808 (M.D.N.C. 2011); *Sprinkle v. SB&C, Ltd.*, 472 F. Supp. 2d 1235 (W.D. Wash. 2006); *Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162 (9th Cir. 2006); *Johnson v. Riddle*, 305 F.3d 1107 (10th Cir. 2002).

"In order to successfully make a claim under the FDCPA, a plaintiff must show that he or she has been the 'object of collection activity arising from consumer debt,' that the defendant is a debt collector governed by the FDCPA, and that the defendant has 'engaged in an act or omission prohibited by the FDCPA.'" *Grant-Fletcher v. Brachfeld Law Group, PC*, 2012 WL 2523094 (D. Md. June 28, 2012) (quoting *Dikun v. Streich*, 369 F. Supp.2d. 781, 784–85 (E.D.Va.2005)). *See also Brown v. Lanham Ford Inc.*, 2010 WL 313253, at *2 (D.Md. Jan.20, 2010).

Plaintiff's Amended Class Action Complaint sets forth two substantive violations of the FDCPA. The first violation arises out the Defendants' practices of adding the following language to the top of the DC/CV 32 and DC/CV 33 forms served on consumers:

> THIS COMMUNICATION IS FROM A DEBT COLLECTOR. IT IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

*See* ECF 15 at ¶¶ 28, 32.

The second violation arises out of the failure of Sawyer to comply with the

Maryland Collection Agency Licensing Act (MCALA). *See* ECF 15 at ¶ 10.

### 1. The Modifications of the DC/CV 32 and DC/CV 33 Forms Violate the FDCPA Because They Deceive the Least Sophisticated Consumer Into Ignoring Court <u>Orders</u>.

Plaintiff alleges that the modifications made to the DC/CV 32 and DC/CV

33 forms violate §§ 1692e, 1692e(10), 1692e(15), and 1692f of the FDCPA, which

prohibit,

> § 1692e. False or misleading representations
>
> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section . . .
>
>> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.
>>
>> (15) The false representation or implication that documents are not legal process forms or do not require action by the consumer.
>
> § 1692f. Unfair practices
>
> A debt collector may not use unfair or unconscionable means to collect of attempt to collect.

These violations are discussed below.

   a.   **The Defendants' Modifications Are False and
        Misleading Representations that Overshadow
        <u>Court Orders and Lull Consumers into Inaction</u>.**

The first sentence of 15 U.S.C. § 1692e prohibits in broad terms the use of

false, deceptive, or misleading representations and collection means. This general

provision is intended to cover deceptive collection acts and practices that do not

fit the specific prohibitions given in the subsections of § 1692e. Congress

recognized that it would be impossible to foresee every type of deceptive

collection misbehavior and expressly provided this general standard to give

courts the flexibility to proscribe improper conduct not specifically anticipated

and addressed by the statute. According to the Senate report "this bill prohibits in

general terms any harassing, unfair, or deceptive collection practice. This will

enable the courts, where appropriate, to proscribe other improper conduct which

is not specifically addressed." S. Rep. No. 382, 95th Cong., 1st Sess. 4, at 4,

reprinted in 1977 U.S.C.C.A.N. 1695, 1696. *See also* FTC Official Staff

Commentary § 807, 53 Fed. Reg. 50097, 50105 (Dec. 13, 1988).

To accomplish the consumer protection purpose of the FDCPA, the courts

apply a "least sophisticated" or "unsophisticated" consumer standard to analyze

the protections the of the FDCPA. The Eleventh Circuit in *Jeter v. Credit Bureau,

Inc.,* 760 F.2d 1168 (11th Cir. 1985), relied heavily on Federal Trade Commission

Act cases in describing the least sophisticated consumer standard:

> The law was not "made for the protection of experts, but for the public -- that vast multitude which includes the ignorant, the unthinking and the credulous," *Florence Mfg. Co. v. J.C. Dowd & Co.,* 2 Cir., 178 F. 73, 75 [(1910]; and the "fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced." *Federal Trade Commission v. Standard Education Soc.,* 302 U.S. 112, 116 [(1937)].

*Id.* at 1173, quoting *Charles of the Ritz Distribs. Corp.v. Federal Trade Comm'n*, 143 F.2d 676, 679 (2d Cir. 1944). *See also Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993) ("In recent years, as courts have incorporated the jurisprudence of the FTC Act into their interpretation of their interpretations of the FDCPA, the language of *Exposition Press* has gradually evolved into what we now know as the least-sophisticated-consumer standard.").

Under the least-sophisticated-consumer standard, many elements of common law fraud are irrelevant to a FDCPA claim for deception. There is no requirement that intent to deceive be established because most of the FDCPA provides for strict liability. *See, e.g., McCollough v. Johnson, Rodenburg & Lauinger, LLC,* 637 F.3d 939, 953 (9th Cir. 2011) ("The FDCPA imposes strict liability on creditors, including liability 'for violations that are not knowing or intentional.'") (quoting *Reichart v. National Credit Systems, Inc.,* 531 F.3d 1002, 1005 (2008)); *Gonzales v. Arrow Fin. Servs., LLC,* 660 F.3d 1055, 1062 (9th Cir 2011) ("The FDCPA does not ordinarily require proof of intentional violation, and is a strict liability statute."); *Bicking v. Mitchell Rubenstein & Assocs., P.C.,* 2011 WL 5325674 (E.D. Va. Nov. 3, 2011) (FDCPA is a strict liability statute -- it

focuses on debt collector's misconduct, and not the uniques extent of each debtor's harm).

Truth is not a defense to a claim of deception and partial truths and ambiguous statements are deceptive if the statement is subject to an interpretation or contains an implication with the capacity to deceive. *See Rosenau v. Unifund Corp.* 539 F.3d 218, 221 (3d Cir. 2008) ("A debt collection letter is deceptive where it can be reasonably read to have two or more different meanings, one of which is inaccurate"); *Drennan v. Van Ru Credit Corp.*, 950 F. Supp. 858 (N.D. Ill. 1996) (claim stated where unsophisticated consumer could interpret defendant's "legal review notification" and "notice of possible wage garnishment," despite frequent use of "may" and "might," as imminent threats when in fact no action was taken for over year after dunning letters were sent.).

Under this standard, the Plaintiff has adequately alleged a violation of § 1692e(10) because the statement "THIS COMMUNICATION IS FROM A DEBT COLLECTOR" is both false and deceptive. The statement is false, because the communication is not from the debt collector, but rather is an order issued by the District Court. This falsehood makes the statement deceptive to a least sophisticated consumer because it has the tendency to confuse the debtors into concluding that the document is not an order of the court.

This is especially the case given that the stamp is placed in prominent locations on the forms and is the most conspicuous information set forth on the document.

The "materiality" of this deceptive statement is obvious and can be inferred by the Court. The added language created confusion and ambiguity as to whether the document was a court order that required the debtor to take action or, instead, just another dunning communication from the debt collector, that did not require that the debtor take action. This deception is highly material in that it had the tendency to create confusion that resulted in missed court appearances and eventual imprisonment.

The Defendants also violated § 1692e(15) by falsely implying that the communication was not a court order. Section 1692e(15)provides that "the false representation or implication that documents are not legal process forms or do not require action by the consumer" constitutes a violation of § 1692e. Under this provision "[a] debt collector may not deceive a consumer into failing to respond to legal process by concealing the import of the papers, thereby subjecting the consumer to a default judgment." FTC Official Staff Commentary, 53 Fed. Reg. 50097, 50107 (Dec. 13, 1988).

Modifying the DC/CV 32 and DC/CV 33 forms to include the statement that "THIS COMMUNICATION IS FROM A DEBT COLLECTOR" overshadowed the fact that the documents were actually court orders. The modifications also had the potential of lulling the consumers into inaction after mistakenly concluding that the communication was from a debt collector, not the court. *See McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 952 (9th Cir. 2011) (without specifically citing section 1692e(15), nonetheless holding that "the

service of requests for admission containing false information upon a pro se defendant without an explanation that the requests would be deemed admitted after thirty days constitutes 'unfair or unconscionable' or 'false, deceptive, or misleading' means to collect a debt."); *See also Blum v. Fisher & Fisher*, 961 F. Supp. 1218 (N.D. Ill. 1997) (jury question existed as to whether a collection attorney's letter describing the foreclosure process was deceptive by potentially lulling the homeowner into inaction).

> **b.** **The Defendants' Modifications Are Unfair and Unconscionable Because They Are an Affront to the Public Policy Against Imprisonment for <u>Debt</u>.**

Defendants' conduct also violates § 1692f which provides that "a debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. This general prohibition covers all unfair or unconscionable acts falling outside the specific acts or practices prohibited in the subsections of § 1692f. The *McCollough* case, discussed above, found that conduct that could mislead a consumer into failing to take action was unfair and unconscionable. In *Lamb v. Javitch, Block & Rathbone, LLP*, 2005 WL 4137786 (S.D. Ohio Jan. 24, 2005), after MBNA obtained an arbitration award against the plaintiff, it filed a motion to confirm and enforce the arbitration award along with a request for an oral hearing. Under the applicable court rules, a hearing was supposed to be scheduled if requested. The debt collector law firm did not set a hearing and the court ultimately entered a default judgment against the debtor

when no response was filed to the motion to confirm and enforce. The court held that these alleged facts stated a "colorable claim under the FDCPA, and are sufficient to overcome a Rule 12(b)(6) motion," which makes sense given that the request for the oral hearing could lead the debtor to conclude that nothing had to be done until the requested hearing was scheduled. *Id.* at *4.

In *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185 (11th Cir.2010), the Eleventh Circuit supported its interpretation of § 1692f with the following definitions of "unfair" and "unconscionable:"

> The plain meaning of "unfair" is "marked by injustice, partiality, or deception." [Merriam-Webster Online Dictionary]. Significantly, in *Jeter*, we noted in dictum that in the FTC context, "[a]n act or practice is deceptive or unfair ... if it has the tendency or capacity to deceive." *Jeter*, 760 F.2d at 1172. The term "unconscionable" means "having no conscience"; "unscrupulous"; "showing no regard for conscience"; "affronting the sense of justice, decency, or reasonableness." BLACK'S LAW DICTIONARY 1526 (7th ed. 1999).

601 F.3d at 1200.

In this case, the conduct of the Defendants is unfair because it arises out of the deception caused by the manner in which the DC/CV 32 and DC/CV 33 forms were modified. This conduct is also unconscionable because it affronts the strong public policy against imprisonment for debt. *See, e.g. In re Estate of Bonham*, 817 A.2d 192, 195 (D.C. 2003) ("contempt in general, and imprisonment in particular, are not appropriate means to enforce a money judgment."); *State of Washington v. Barklind*, 87 Wash.2d 814, 557 P.2d 314, 318 (1976) ("It is

elementary that personal liberty transcends the obligation to pay a monetary sum in most circumstances.").

###    c.    Section 1692e(11) Does Not Require Defendants to Modify a Court Order.

Defendants argue that they were required by § 1692e(11) to include the disclosure. Section 1692e(11) provides that the following conduct violates the FDCPA:

> (11) The failure to disclose in the **initial written communication with the consumer** and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, **except that this paragraph shall not apply to a formal pleading made in connection with a legal action**.

15 U.S.C. § 1692e(11) (emphasis supplied).

In this case, the documents at issue were not a communication from a debt collector, and were not the initial communication with the debtor.

Cases addressing the application of § 1692e(11) in litigation-related documents have addressed the "formal pleading" exception to § 1692e(11) in the context of written discovery prepared by the debt collector and sent directly to the to debtor. *See, e.g., Hauk v. LVNV Funding, LLC,* 749 F. Supp. 2d 358, 367 (D. Md. 2010) (holding that because interrogatories were not "formal pleadings," plaintiffs had stated a valid claim under § 1692e(11) for failure to include the

required notice); *but see Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 235 n. 2 (4th Cir.2007) (where the Fourth Circuit expressly reserved decision on whether interrogatories should be considered "formal pleadings" under the FDCPA and reversed on other grounds the District Court's initial conclusion that interrogatories are "formal pleadings").

These cases are not on point, because the documents at issue here are Court orders, not discovery. They were not initially sent to the consumer like discovery requests, but rather were submitted by Tapper to the District Court, which then completed the form and created a court order that was then returned to Tapper to arrange for service on the consumers.

A case directly on point is *Zevgolis v. Greenberg Law Firm, P.C.*, 2011 WL 251024 (E.D. Va. Jan. 26, 2011), which holds that the § 1692e(11) notice is not required on court-issued documents because they are not communications from debt collectors:

> Here, however, Greenberg did not simply serve written discovery interrogatories on Zevgolis; rather, the Defendant sought to engage in the process of "debtor's interrogatories," as they are commonly called in Virginia practice. *See, e.g., Ainslie v. Inman*, 265 Va. 347, 577 S.E.2d 246, 248 (Va. 2003). The activity is a distinct statutory procedure authorized by Va. Code § 8.01–506, whereby a judgment creditor, having already prevailed in litigation, may seek to compel the judgment debtor to appear to orally answer questions about their assets. Unlike discovery interrogatories, the party employing the procedure may not craft written interrogatories and serve them directly on the judgment debtor. Rather, the judgment creditor requests the procedure from the clerk of the court who, in turn, issues a summons requiring the appearance of the judgment debtor. Va.Code § 8.01–506(B);

*see also* W. Hamilton Bryson, *Bryson on Virginia Civil Procedure* § 9.06[1][d] (4th ed.2005). Thus, the communication is issued in the form of a summons from the clerk of the court, not from the creditor itself. Indeed, the creditor has no control over the form or contents of the summons, except for the logistical information provided to the clerk (i.e. names, addresses, dates, times, amount of judgment, etc.).

Such is exactly the case here. Greenberg completed the form provided by the Hopewell, Virginia General District Court, and submitted it to the Clerk of the Court. (Compl.Ex. C.) The Clerk thereupon issued the summons to the Hopewell Sheriff's Office, which served it on Zevgolis at her former address by "posting" on the door of the residence. (Id. ¶ 10, 577 S.E.2d 246, Ex. C.) The summons was not a communication from Greenberg, but rather a summons issued by an authorized clerk of court performing official duties. As such, the clerk's communication is not the "initial written communication" between creditor and debtor because the clerk is not a "debt collector" as defined by the FDCPA. 15 U.S.C. § 1692a(6)(c). It is axiomatic that where the debt collector is not the one conveying the message, and has no control over the form of the message, such communication cannot constitute an "initial written communication" for FDCPA purposes.

Although the Court concludes that interrogatories themselves are not "formal pleadings" exempted from the FDCPA's "initial written communication" requirements, the Court finds that the Summons at issue did not constitute a communication by a creditor subject to the strictures of the FDCPA.

*Id.* at *3-*4.

Additionally, at least one district court has reasoned that all documents created during the litigation process are covered by the "formal pleadings" exception to § 1692e(11):

Motherway focuses on the technical definition of "pleading,"

arguing that it does not include litigation documents other than complaints, answers, and replies. CR 7. From this, he infers that subsequent litigation documents, such as motions for summary judgment and requests for admission, are not exempt from the requirement of notice that the communication is from a debt collector. While it is true that the statutory language can theoretically be construed in Motherway's favor, such an interpretation goes against common sense and will not be adopted by this court.

Here, the initial communication between Gordon and Motherway contained all of the requisite information. [See Aylworth Aff., Dkt. # 21, at Ex. 1]. In the subsequent phone call Gordon identified itself as a debt collector. The summons and complaint subsequently served on Motherway did not include this language. This omission is specifically permitted under the FDCPA § 1692e(11) exemption for formal pleadings made in connection with litigation.

It does not make sense that Gordon is required to re-affirm its status as a debt collector in subsequent, post-pleading litigation documents.

*Motherway v. Gordon*, 2010 WL 2803052 (W.D. Wash. July 15, 2010) reconsideration denied, 2010 WL 3061788 (W.D. Wash. July 30, 2010).

In this case, as in *Zevgolis*, there was no requirement to include the § 1692e(11) statement on the DC/CV 32 and DC/CV 33 forms.

**2.      Defendants Violated the FDCPA by Collecting Debts on Behalf of an Unlicensed Collection Agency.**

The Amended Class Action Complaint alleges that Sawyer is "a rental agent for various landlords throughout Maryland including, without limitation, SRH Woodmoor LLC, the owner of a rental property known as 'Gwynn Oaks I.'" *See* ECF 15 at ¶10. Thus, the "creditor" in this case is the owner of the rental property,

Woodmoor, LLC and Sawyer acted as a rental agent collecting rents owed to SRH Woodmoor, LLC. Because Sawyer is engaged in the business of collecting debts alleged to be due another in the State of Maryland, it was required to be licensed under by the Maryland Collection Agency Licensing Act ("MCALA"), Md. Code Ann., Bus. Reg. § 7-101, *et seq,*.

MCALA requires that "a person must have a license whenever the person does business as a collection agency in the State," *id.* at § 7-301(a), and defines "collection agency" as "a person who engages directly or indirectly in the business of: (1)(i) collecting for, or soliciting from another, a consumer claim. . ." *Id.* at § 7-101(c). A "consumer claim" is a claim that "arises from a transaction in which, for a family, household or personal purpose, the [Maryland] resident sought or got credit, money, personal property, real property, or services." *Id.* at § 7-101(e).

The Amended Class Action Complaint alleges that Sawyer is not licensed as a required by MCALA. *See* ECF 15 at ¶10.

In *Fontell v. Hassett*, 2012 WL 2479543 (D. Md. June 28, 2012), this court held that management agents for a home owner association are required to be licensed under MCALA:

> Though it is a close call, this Court finds that as a matter of law, the management agent should be considered a third party under § 7–101(c)(1)(i) [Md. Code Ann, Bus. Reg.] when collecting debts on behalf of the homeowner association, since the parties were merely bound by contract and are indisputably separate entities. Thus, the management agent's actions in sending collection notices and filing a lien on Plaintiff's property would constitute doing business as a collection agency under the MCALA.

*Id.* In *Fontell*, the Court ultimately granted judgment as a matter of law in favor of the Plaintiff "for violation of the MCDCA by the management agent and its employees for operating as debt collectors without a license."

Despite not being licensed, Sawyer filed collection lawsuits. Although it stated in the complaint's caption that it was an agent for SRH Woodmoor LLC, it is undisputed that Sawyer acted as the plaintiff in the lawsuit and directed Tapper to file the lawsuit naming Sawyer as the plaintiff, not SRH Woodmoor LLC. In *Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp. 2d 719, 731 (D. Md. 2011), this Court held that "filing of lawsuits [by unlicensed collection agencies] against the class members constitutes 'a threat to take ... action that cannot legally be taken' in violation of 15 U.S.C. § 1692e(5). . ."

Additionally, this court has held that bringing and threatening to bring litigation without having obtained a state debt collection license supports a claim under § 1692f. *See Hauk v. LVNV Funding, LLC*, 749 F. Supp. 2d 358, 366 (D. Md. 2010) (holding that allegations that the defendant was debt collecting without a Maryland license stated a claim under § 1692f because "[a]s the Eleventh Circuit recently concluded, a debt collector's failure to register under a state debt collection law 'is an appropriate consideration in deciding whether [its] 'means' of collection were 'unfair or unconscionable.' ' ") (quoting *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1200 (11th Cir.2010)).

### 3. **Sawyer is a Debt Collector Governed by the FDCPA.**

The FDCPA defines "debt collector" to mean "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. 1692a(6). Although, the FDCPA does not apply to creditors collecting debts in their own names and whose primary business is not debt collection, *Boccone v. Am. Express Co.*, 2007 WL 2914909 (D.Md. Oct. 4, 2007), Sawyer does not qualify as the creditor because it is not the landlord. Rather, as alleged in the Class Action Complaint, Sawyer is "a rental agent for various landlords throughout Maryland." *See* ECF 15, ¶ 10. Sawyer concedes this point. *See* ECF 14-1 at 2 ("Sawyer is a rental and property management agent for Maryland landlords.").

Sawyer argues that it is excluded from coverage by the exemption found at § 1692a(6)(F)(iii):

> The term [debt collector] does not include--
>
> (F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . (iii) concerns a debt which was not in default at the time it was obtained by such person. . .

The legislative history emphasizes that this exemption was included to apply to "mortgage service companies and others who service outstanding debts for others, so long as the debt were not in default when taken for servicing." S.

Rep. No. 382, 95th Cong., 1st Sess. 3, at 3, reprinted in 1977 U.S.C.C.A.N. 1695, 1696 *See also* FTC Official Staff Commentary, 53 Fed. Reg. 50103 (explaining that the exemption found at § 803(6)(F)(iii) "applies to parties such as mortgage service companies whose business is servicing *current* accounts)(emphasis supplied). In such circumstances, the mortgage servicer "obtains" the rights to service the consumer  pursuant to a formal arrangement.

In order for the exemption to apply in this case, Sawyer must first establish the terms and conditions upon which it "obtained" the accounts from the landlords, which is a factual issue that cannot be resolved at the motion to dismiss stage. Once this is established, Sawyer must also prove that the accounts were not in default when they were obtained.

Section 803(6)-1 of the FTC Official Staff Commentary explains that "debt collector" includes "a firm that regularly collects overdue rent on behalf of real estate owners, or periodic assessments on behalf of condominium owners on behalf of condominium associations," because it "regularly collects . . . debts owed or due another." 53 Fed. Reg. 50097, 50102 (Dec. 13, 1988). The conduct at issue in this case is limited to the activities of Sawyer in suing tenants for overdue rent and obligations owed to the landlord.

Sawyer's business clearly is made up of distinct and separate aspects. On the one hand, it apparently "services" rental accounts that are not in a default status -- conduct that is not subject to the FDCPA. On the other hand, however, Sawyer also brings lawsuits in its own name (rather in the name of the landlord),

to collect on accounts that are in default. This separate activity takes Sawyer beyond the role of mere servicer of rental accounts and into the role of a third party debt collector.

In this regard, Courts have routinely held that the filing a lawsuits to collect debts constitutes collection activity that is subject to the FDCPA. *See Heintz v. Jenkins*, 514 U.S. 291, 297, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995) (holding that litigation to collect a debt is collection activity under the FDCPA); *Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 230 (4th Cir.2007) (explaining that the FDCPA applies when the debt-collecting activity is litigation); *LeBlanc v. Unifund CCR Partners,* 601 F.3d 1185, 1193 (11th Cir.2010) (summarily rejecting debt collector's claim that filing lawsuits to collect debt is not "collection activity" under the FDCPA); *Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp. 2d 719, 731 (D. Md. 2011) ("filing of lawsuits [by unlicensed collection agencies] against the class members constitutes 'a threat to take ... action that cannot legally be taken' in violation of 15 U.S.C. § 1692e(5). . ."); *Hauk v. LVNV Funding, LLC,* 2010 WL 4395395 (D.Md. Nov. 5, 2010) ("filing suit against defaulted debtors is a core business of debt collectors.").

The cases relied upon by Sawyer in ECF 14 and ECF 19 are not on point and involve questions of facts that have not been similarly developed in this case at this point. In *Franceshi v. Mautner-Glick Corp.*, 22 F. Supp.2d 250 (S.D.N.Y. 1998), there were unique facts that resulted in the court ruling that the managing agent was in essence the landlord. For example, both the management agreement

(the contract between the managing agent and landlord) and the rental agreement (the contract between the landlord and debtor tenant) stated explicitly that the managing agent had full responsibility for collecting all current and past due rents. *Id.* at 255.

*Reynolds v. Gables Residential Servs., Inc.*, 428 F. Supp. 2d 1260 (M.D. Fla. 2006), is not on point for two reasons. First, in that case, after examining "the lease agreement and general relationship between a community manager and property owner" the court determined that the agent had a fiduciary relationship to the owner and was exempt under § 1692a(6)(F)(i). Sawyer does not contend that this exemption applies to it in this case. More importantly, the agent in *Reynolds* only collected rent as it became due, and referred accounts that were in default to a third-party collection agency. In this case, Sawyer served both functions. It collected rent as it became due, and also acted as a collection agency to recover amounts after defaults, which is the conduct that is at issue in this lawsuit.

*Fontell v. Hassett*, 2012 WL 2479543 (Jun. 28, 2012), should not be followed on this issue because it is not consistent with the FTC Official Staff Commentary explanation that "debt collector" includes "a firm that regularly collects overdue rent on behalf of real estate owners, or periodic assessments on behalf of condominium owners on behalf of condominium associations," because it "regularly collects . . . debts owed or due another." 53 Fed. Reg. 50097, 50102. There is no evidence that Sawyer owns the accounts that it is collecting and,

therefore, Sawyer cannot establish that it obtained the accounts before they were in default.

Finally, *Stewart v. Santander Consumer USA Inc.*, 2011 WL 4790756 (D. Md. Oct. 6, 2011) is not on point because Santander was not a third party agent collecting for the lender, but rather had previously acquired the loan and was, therefore, the creditor.

### 4. Sawyer is Vicariously Liable for the FDCPA Violations of Tapper.

Even if Sawyer does not meet the FDCPA's definition of "debt collector," it is still vicariously liable for the FDCPA violations of Tapper. "Under Maryland law, . . . '[a] principal is prima facie liable for the acts of his agent done in the general course of business authorized by him.'" *Winemiller v. Worldwide Asset Purchasing, LLC*, 2011 WL 1457749 (D. Md. Apr. 15, 2011) (quoting *Carroll v. State*, 65 Md. 551, 3 A. 29, 29 (Md. 1885)). In *Winemiller*, this Court rejected an argument by a debt buyer that it was not attempting to collect debts under the MCDCA because it referred the debts to licensed attorneys to file the lawsuits, explaining that "[u]nder the legal principles of Maryland agency law discussed above, Plaintiffs may still be able to hold Defendants liable if even if they hired a third-party to pursue the debt collection claims." *Winemiller v. Worldwide Asset Purchasing, LLC*, 2011 WL 1457749 (D. Md. Apr. 15, 2011).

Numerous cases have found a collection agency to be an agent for which the creditor is responsible. *E.g., Patzka v. Viterbo College*, 917 F. Supp. 654

(W.D. Wis. 1996) (finding collection agency to be agent of college resulting in the college's liability under a state statute for the collector's demands for illegal fees and interest); *Casewell v. Cross*, 120 Mass. 545 (1876) (creditor liable for false arrest of debtor by collection agency which advertised it would collect by treating debtors "with delicacy, so as not to offend them, or with such severity as to show that no trifling is intended"); *McNeal v. Steinberger*, 135 P.2d 490 (Okla. 1943) (collection agency owed fiduciary duty of an agent to creditor); *Drisol v. Household Credit Servs., Inc.,* 989 S.W.2d 72 (Tex. App. 1998) (while agency's death threats and job contacts were beyond the scope of its duties, Household could have ratified the agencies abuses as found by the jury); *Morante v. American General Fin. Ctr.*, 157 F.3d 1006 (5th Cir. 1998) (where a collection subsidiary of a finance company had the right of control over a debt collection agency, the subsidiary was liable for punitive damages resulting from the agency's debtor harassment); *Taylor v. Checkrite, Ltd.,* 627 F. Supp. 415 (S.D. Ohio 1986) (Checkrite, a collector on dishonored checks and a credit reporting agency, was responsible for the FDCPA violations of its franchisee agents where Checkrite exercised control over the activities of the franchise which resulted in the violations); *Southwestern Bell Tel. Co. v. Wilson*, 768 S.W.2d 755 (Tex. App. 1988) (creditor was held responsible under agency principles for torts committed by private attorney retained for collection efforts; the attorneys, in turn, were held responsible for torts committed by constable and deputy in the course of an execution and levy).

This Court has previously held that creditors and collection agencies are individually liable for their attorney's violations of the FDCPA. *See Hauk v. LVNV Funding, LLC,* 749 F. Supp.2d 358 (D. Md. 2010) ("It is unlikely Congress intended to permit a debt collector to avoid liability for violations of the FDCPA disclosure requirements simply by hiring a law firm to make court filings that would otherwise be subject to the statute."). Other courts have reached the same result. *See, e.g., Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507, 1516 (9th Cir. 1994) ("If we were to conclude, as Citicorp urges, that debt collectors are shielded from liability for venue violations whenever a legal action is filed by an attorney, we would have to decide that section 1692i was superfluous as originally enacted"). *See also Ditty v. CheckRite, Ltd.*, 973 F. Supp. 1320 (D. Utah 1997); *Newman v. CheckRite California, Ltd,* 912 F. Supp. 1480 (M.D. Ala. 1987); *Martlsolf v. JBC Legal Group, P.C.*, 2008 WL 275719 (M.D. Pa. Jan. 30, 2008); *Oei v. N. Star Capital Acquisitions, LLC*, 486 F. Supp.2d 1089 (C.D. Cal. 2006); *Caron v. Charles E. Maxwell, P.C.*, 48 F. Supp.2d 932, 936 (D. Ariz. 1999); *First Interstate Bank of Fort Collins v. Soucie*, 924 P.2d 1200, 1202 (Colo. App. 1996).

## B.     PLAINTIFF HAS ADEQUATELY ALLEGED VIOLATIONS OF THE MARYLAND CONSUMER DEBT COLLECTION ACT AND THE MARYLAND CONSUMER PROTECTION ACT.

The Defendant's conduct also supports a claim under the MCDCA and MCPA. As explained in *Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp. 2d 719, 731-32 (D. Md. 2011):

The Maryland Consumer Debt Collection Act ("MCDCA") prohibits debt collectors from utilizing threatening or underhanded methods in collecting or attempting to collect a delinquent debt. Md.Code Ann., Com. Law §§ 14–201 to 14–204. Specifically, the MCDCA states that a "person collecting or attempting to collect an alleged debt arising out of a consumer transaction," *id.* § 14–201(b), may not "[c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist." *Id.* § 14–202(8).

The Maryland Consumer Protection Act ("MCPA") prohibits "unfair or deceptive trade practices," Md.Code Ann., Com. Law § 13-301, and expressly designates as "unfair or deceptive trade practices" those that constitute any violation of the MCDCA. *Id.* § 13-301(14)(iii).

### 1. Collecting Debts Without a License Violates the MCDCA.

In *Hilco* this court held that an unlicensed "collection agency" that filed collection lawsuits violated § 14-202(8) of the MCDCA because this conduct constituted an attempt to enforce a right with knowledge that the right does not exist, explaining:

> This Court has previously construed the level of knowledge required under the MCDCA and has held that "[c]onsidering the remedial aim of the MCDCA and the dilution of the statute that would result from a contrary interpretation, the Court holds that the term 'knowledge' in the Act does not immunize debt collectors from liability for mistakes of law." *Spencer v. Hendersen–Webb, Inc.*, 81 F.Supp.2d 582, 594 (D.Md.1999). In addition, the "knowledge" requirement of the MCDCA "has been held to mean that a party may not attempt to enforce a right with actual knowledge or with reckless disregard as to the falsity of the existence of the right." *Kouabo v. Chevy Chase Bank, F.S.B.*, 336 F.Supp.2d 471, 475 (D.Md. 2004) (citing *Spencer*, 81 F.Supp.2d at 595). Moreover, this Court has further noted that "it does not seem unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the

line." *Spencer*, 81 F. Supp.2d at 595 (quoting *Russell v. Equifax A.R.S.*, 74 F.3d 30, 35 (2d Cir. 1996)) (in turn, quoting *FTC v. Colgate–Palmolive Co.*, 380 U.S. 374, 393, 85 S.Ct. 1035, 13 L.Ed.2d 904 (1965)). In the present case, Hilco undoubtedly went perilously close to an area of proscribed conduct in failing to abide by Maryland's licensing laws for debt collectors, and as discussed above, actually crossed the line.

*Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp. 2d 719, 732 (D. Md. 2011); *See also Fontell v. Hassett*, 2012 WL 2479543 (D. Md. June 28, 2012), which also explained that:

> . . . .Defendants' violation of the MCDCA for attempting to collect debts without a license constitutes an "unfair or deceptive trade practice" under the MCPA, and the management agent and its employees must be found to have violated that statute as well.

*Id.* at * 11 (citing *Bradshaw v. Hilco Receivables, LLC*, 765 F.Supp.2d 719, 732-33 (D.Md. 2011).

### 2. The Maryland Consumer Protection Act Applies to Attorney's Acting as Debt Collectors.

As explained in *Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp. 2d 719, 731-32 (D. Md. 2011):

> The Maryland Consumer Protection Act ("MCPA") prohibits "unfair or deceptive trade practices," Md.Code Ann., Com. Law § 13–301, and expressly designates as "unfair or deceptive trade practices" those that constitute any violation of the MCDCA. *Id.* § 13–301(14)(iii).

*See also Fontell v. Hassett*, 2012 WL 2479543 (D. Md. June 28, 2012) (". . . .Defendants' violation of the MCDCA for attempting to collect debts without a license constitutes an 'unfair or deceptive trade practice' under the MCPA, and

the management agent and its employees must be found to have violated that statute as well.")

The MCDCA clearly applies to law firms and the statute does not provide any exemption for lawyers. Nonetheless, Tapper argues that it is covered by the MCPA's exemption for lawyers.

"[I]n construing legislative enactments, all statutes relating to the same subject matter are to be considered and harmonized as far as possible." *May v. Warnick*, 227 Md. 77, at 83, 175 A.2d 413, at 415 (1961). Since lawyers who engage in the business of debt collection can be held liable under the MCDCA, it follows that the legislature also intended that they would be liable under MCPA when the basis of liability is the violation of the MCDCA. Thus, the two statutes can best be harmonized by limiting the MCPA's attorney exemption to MCPA violations that are not derivative of MCDCA violations.

This interpretation is also consistent with the public policy espoused in the 1986 amendments to the FDCPA. When originally enacted, the FDCPA provided an exemption for lawyers. Congress amended the FDCPA in 1986 to eliminate the attorney exemption after concluding that attorneys were some of the most egregious violators of the FDCPA, and that the exemption had encouraged unscrupulous creditors to avoid FDCPA liability by seeking unscrupulous attorneys to collect their debts. Data showed that by 1985, due to the FDCPA's original attorney exemption, more lawyers were regularly collecting consumer debts than persons in the non-lawyer debt collection industry, and that some

firms were advertising their FDCPA exemption as an advantage. *See Oversight Hearing on FDCPA and H.R. 4617 Before the Subcommittee on Consumer Affairs and Coinage of the House Committee on Banking, Finance and Urban Affairs*, 98th Cong., 2d Sess. (Jan. 31, 1984); *Hearings on H.R. 237, Before the Subcommittee on Consumer Affairs and Coinage of the House Committee on Banking, Finance and Urban Affairs*, 99th Cong., 1st Sess. (Oct. 22, 1985); H.R. Rep. No. 405, 99th Cong., 1st Sess. (Nov. 26, 1985) *reprinted in* 1986 U.S.C.C.A.N. 1752, 132 Cong. Rec. H10534 (daily ed. Dec. 2 1985) (statement of Rep. Annunzio).

Exempting debt collecting lawyers from MCPA liability would limit the remedy provided to consumers by the MCDCA because it would remove the ability to be awarded attorneys fees. This would create a potential loophole in the MCDCA's enforcement mechanism which could potentially result in an increase in unscrupulous debt collection conduct.

Finally, Kharyn Ramsay has adequately alleged actual damages in support of her MCDCA and MCPA causes of action. See, e.g., ECF 15 at ¶¶ 129, 133.

> As a direct consequence of Defendants' acts, practices and conduct, KHARYN RAMSAY and the class she seeks to represent suffered actual damages, including having money judgments wrongfully entered against them and being improperly subject to arrest and imprisonment resulting in embarrassment, emotional distress, anger and frustration.

Therefore, the Amended Class Action Complaint adequately alleges violations of the MCDCA and the MCPA.

## CONCLUSION

As demonstrated herein, Plaintiff has properly pled a cause of action under the FDCPA, MCDCA and MCPA entitling the Plaintiff and the class she seeks to represent to actual and statutory damages.

For these reasons, the motion to dismiss amended complaint or in the alternative motion for summary judgment filed on behalf of Tapper (ECF 17) and the motion to dismiss amended complaint filed by Sawyer (ECF 19) should be denied. Should the Court grant either Defendant's motion in whole or in part, Plaintiff respectfully requests leave to file a Second Amended Class Action Complaint.

## REQUEST FOR HEARING

Undersigned counsel requests a hearing.

Dated: November 27, 2012                    Respectfully Submitted,


                                            */s/ E. David Hoskins*
                                            E. David Hoskins, Bar No. 06705
                                            LAW OFFICES OF E. DAVID HOSKINS, LLC
                                            Quadrangle Building at Cross Keys
                                            2 Hamill Road, Suite 362
                                            Baltimore, Maryland 21210
                                            (410) 662-6500 (Tel.)
                                            (410) 662-7800 (Fax)
                                            *dhoskins@hoskinslaw.com*

## CERTIFICATE OF SERVICE

This is to certify that the foregoing document was served electronically through the Court's CM/ECF system upon counsel for all parties.

November 27, 2012.                    */s/ E. David Hoskins*