FILED: December 9, 2014

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

No. 13-1795
(1:12-cv-02741-RDB)

———————————

KHARYN RAMSAY

Plaintiff - Appellant

v.

SAWYER PROPERTY MANAGEMENT OF MARYLAND LLC; JEFFREY
TAPPER, Attorney-At-Law

Defendants - Appellees

———————————

J U D G M E N T

———————————

In accordance with the decision of this court, the judgment of the district

court is affirmed.

This judgment shall take effect upon issuance of this court's mandate in

accordance with Fed. R. App. P. 41.

/s/ PATRICIA S. CONNOR, CLERK

**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 13-1795**

---

KHARYN RAMSAY,

            Plaintiff - Appellant,

    v.

SAWYER PROPERTY MANAGEMENT OF MARYLAND LLC; JEFFREY TAPPER,
Attorney-At-Law,

            Defendants - Appellees.

---

Appeal from the United States District Court for the District of
Maryland, at Baltimore.    Richard D. Bennett, District Judge.
(1:12-cv-02741-RDB)

---

Argued:  September 16, 2014          Decided:  December 9, 2014

---

Before WILKINSON, GREGORY, and KEENAN, Circuit Judges.

---

Affirmed by unpublished opinion.    Judge Keenan wrote the
opinion, in which Judge Wilkinson joined.  Judge Gregory wrote a
separate opinion dissenting in part.

---

**ARGUED:** Max F. Brauer, LAW OFFICE OF E. DAVID HOSKINS, LLC,
Baltimore, Maryland, for Appellant.    James Edward Dickerman,
ECCLESTON & WOLF, PC, Hanover, Maryland; Donald A. Rea, SAUL
EWING LLP, Baltimore, Maryland, for Appellees.  **ON BRIEF:** E.
David Hoskins, THE LAW OFFICES OF E. DAVID HOSKINS, LLC,
Baltimore, Maryland, for Appellant.    Geoffrey M. Gamble, SAUL
EWING LLP, Baltimore, Maryland, for Appellee Sawyer Property
Management of Maryland LLC.    Lauren E. Marini, ECCLESTON & WOLF,

PC, Hanover, Maryland, for Appellee Jeffrey Tapper, Attorney-at-Law.

Unpublished opinions are not binding precedent in this circuit.

BARBARA MILANO KEENAN, Circuit Judge:

Kharyn Ramsay appeals the district court's dismissal of her claims asserted under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692 through 1692p. Ramsay alleged that the rental agent for her former apartment and the agent's attorney violated the FDCPA by placing certain language on two court orders, thereby causing her to be confused regarding her obligation to appear at court proceedings. The district court dismissed Ramsay's complaint, concluding under Federal Rule of Civil Procedure 12(b)(6) that Ramsay had failed to state a claim. Upon our review, we hold that the rental agent was not a "debt collector" bound by the requirements of the FDCPA, and that the language added to the court orders by the agent's attorney was not "false, deceptive, or misleading" within the meaning of the FDCPA. We therefore affirm the district court's judgment.

I.

Ramsay was a tenant of certain residential property owned by SRH Woodmoor LLC (Woodmoor). The property was managed by defendant Sawyer Property Management of Maryland, LLC (Sawyer). When Ramsay defaulted on her rent obligations, Sawyer later obtained a judgment against Ramsay in Maryland state court in the amount of $1,540.84.

3

Following Ramsay's failure to pay the judgment amount, Sawyer hired defendant Jeffrey Tapper, an attorney and collection agent licensed by the state of Maryland, to collect the debt from Ramsay.    Pursuant to Maryland state court procedures, Tapper served Ramsay with a "DC/CV 32" court order signed by a Maryland district court judge, which order directed Ramsay to appear in court for an oral examination regarding her assets and property.  See Md. Rule § 3-633(b).

After Ramsay failed to appear, Tapper obtained and served on her a "DC/CV 33" order from the court requiring that she appear in court for a show cause hearing.  Because Ramsay did not appear for the show cause hearing as ordered, the court found her in contempt of court.  Ramsay later was arrested and released on her own recognizance.

On the portion of both orders completed by Tapper requesting court action, Tapper had used an "ink stamp" to add certain language (the stamped language).  The stamped language, which is at issue in this case, stated that:

> THIS COMMUNICATION IS FROM A DEBT COLLECTOR.  IT IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

Ramsay argued in the district court: (1) that the stamped language was deceptive, causing her to ignore both court orders, see 15 U.S.C. § 1692e; and (2) that Sawyer improperly collected debts without obtaining a collection agency license as required

4

by Maryland law, see 15 U.S.C. § 1692f. Ramsay also brought state law claims under the Maryland Consumer Debt Collection Act and the Maryland Consumer Protection Act.

The district court dismissed Ramsay's FDCPA claims under Federal Rule of Civil Procedure 12(b)(6). The court declined to exercise supplemental jurisdiction over the state law claims, and dismissed those claims without prejudice. This appeal followed.

## II.

Ramsay argues that the district court erred in dismissing her claims against Sawyer based on the court's conclusion that Sawyer was not a "debt collector" under the FDCPA. According to Ramsay, Sawyer's status as a debt collector was established by the fact that Sawyer was Woodmoor's agent, and regularly acted in that capacity collecting money owed to its principal. We disagree with Ramsay's argument, which is precluded by the FDCPA's definition of "debt collector."

In enacting the FDCPA, Congress sought "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692. Section 1692e generally prohibits "debt collectors" from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." Additionally, Section 1692f forbids "debt collectors"

5

from using "unfair or unconscionable means to collect or attempt to collect any debt."

The FDCPA defines a "debt collector" as (1) "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts," or (2) any person "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Critically, the FDCPA excludes from the definition of "debt collector" "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F)(iii).

A rental agent generally "obtains" a debt when a lease is executed, which necessarily predates a default under the lease, unless the agent's relationship with its principal begins at some later date.[1] Carter v. AMC, LLC, 645 F.3d 840, 843 (7th Cir. 2011). In the present case, Ramsay entered into her lease agreement with Sawyer, which was acting as the rental agent of the property owner, Woodmoor. In this capacity, Sawyer was

---

[1] A rental agent "'obtains' a debt in the sense that it acquires the authority to collect the money on behalf of another." Carter, 645 F.3d at 844.

6

listed on the lease as Ramsay's landlord and, under the terms of the lease, Ramsay was obligated to remit her monthly rental payments to Sawyer.

In her complaint, Ramsay offers no contrary allegations that undermine the facts plain on the face of the lease document, namely, that Sawyer "obtained" Ramsay's debt when she first signed the lease. Because Sawyer obtained Ramsay's debt before the debt was in default, Sawyer was not a "debt collector" bound by the requirements of the FDCPA. See 15 U.S.C. § 1692a(6)(F)(iii). Accordingly, the district court did not err in dismissing Ramsay's FDCPA claims against Sawyer.

### III.

Ramsay next argues that Tapper violated the FDCPA by adding the stamped language to the DC/CV 32 and 33 court orders. As noted above, the stamped language stated:

> THIS COMMUNICATION IS FROM A DEBT COLLECTOR. IT IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

Ramsay contends that the stamped language was false, because the "communication" was an order from the court rather than from a debt collector.[2] She further argues that the stamp deceptively implied that the DC/CV 32 and DC/CV 33 documents were not court

---

[2] Tapper indisputably was a debt collector within the meaning of the FDCPA.

orders requiring a response. We disagree with Ramsay's
arguments.

To effectuate its goal of eliminating abusive debt
collection practices, the FDCPA imposes certain affirmative
requirements on debt collectors and prohibits a wide range of
conduct. See Russell v. Absolute Collection Servs., 763 F.3d
385, 388-89 (4th Cir. 2014). In addition to the general
prohibition that "[a] debt collector may not use any false,
deceptive, or misleading representation or means in connection
with the collection of any debt," Section 1692e also specifies a
non-exhaustive list of prohibited conduct, including:

> The use of any false representation or deceptive means
> to collect or attempt to collect any debt or to obtain
> information concerning a consumer.

§ 1692e(10),

> The failure to disclose in the initial written
> communication with the consumer . . . that the debt
> collector is attempting to collect a debt and that any
> information obtained will be used for that purpose,
> and the failure to disclose in subsequent
> communications that the communication is from a debt
> collector, except that this paragraph shall not apply
> to a formal pleading made in connection with a legal
> action.

§ 1692e(11), and

> The false representation or implication that documents
> are not legal process forms or do not require action
> by the consumer.

§ 1692e(15).

8

In evaluating claims under Section 1692e, we must determine whether a "least sophisticated consumer" would be misled or deceived by the communication. Absolute Collection Servs., 763 F.3d at 394. The question whether a communication is deceptive or misleading to such a consumer "does not turn on the credibility of extrinsic evidence." Terran v. Kaplan, 109 F.3d 1428, 1432 (9th Cir. 1997) (discussing debtor's assertion that certain language in a collection letter rendered confusing the notice provision in the letter required by Section 1692g of the FDCPA). Instead, a court must consider whether the communication in question reasonably can be viewed as being deceptive or misleading. See Russell v. Equifax A.R.S., 74 F.3d 30, 35 (2d Cir. 1996) (holding that a collection notice violated § 1692e when it "was reasonably susceptible to an inaccurate reading").

This determination requires an objective inquiry, which involves application of a less demanding standard than that of a "reasonable" consumer. Gonzales v. Arrow Fin. Servs., LLC, 660 F.3d 1055, 1061-62 (9th Cir. 2011); see Absolute Collection Servs., 763 F.3d at 394-95 (discussing objective nature of the standard); United States v. Nat'l Fin. Servs., Inc., 98 F.3d 131, 135-36 (4th Cir. 1996) (explaining the standard and citing cases). Given the objective nature of this inquiry, a district court's application of the least sophisticated consumer test

9

ordinarily presents a question of law, which we review on appeal
de novo.[3]

The use of a test evaluating the understanding of a least
sophisticated consumer is intended to ensure that "the gullible
as well as the shrewd" are not deceived by communications from a
debt collector.    Nat'l Fin. Servs., Inc., 98 F.3d at 136
(citation omitted).    Although the FDCPA protects uninformed
consumers, the standard employed nevertheless protects creditors
from "liability for bizarre or idiosyncratic interpretations of
collection notices by preserving a quotient of reasonableness
and presuming a basic level of understanding and willingness to
read with care."    Id.    Accordingly, courts must remain mindful
not to "conflate lack of sophistication with unreasonableness."
Ellis v. Solomon & Solomon, P.C., 591 F.3d 130, 135 (2d Cir.
2010) (discussing standard of the least sophisticated consumer
in the context of Section 1692g).

To evaluate Ramsay's claim that a least sophisticated
consumer reasonably would have been misled or deceived by the
stamped language, we consider that language in the context of

---

[3] We recognize that some cases may involve disputed factual
issues that must be resolved before the court makes the legal
determination whether a communication is false, deceptive, or
misleading to the least sophisticated consumer.  The enumerated
violations in Section 1692e may depend on factual questions such
as, for example, whether a debt collector in fact intended to
take threatened action under Section 1692e(5).  See Nat'l Fin.
Servs., 98 F.3d at 136-39.

the entirety of the documents on which the language appeared. The first line of the DC/CV 32 was captioned, "District Court of Maryland for Baltimore County," and was followed by the court's address and a case number. The top half of the document was entitled "Request for Order Directing Defendant to Appear for Examination in Aid of Enforcement of Judgment," and listed Sawyer as the "plaintiff/judgment creditor" and Ramsay as the "defendant/judgment debtor." The bottom half of the document prominently was labeled, "Order of Court." This portion of the document stated that Ramsay was "subpoenaed to appear in person before a judge of this Court . . . to be examined under oath concerning any assets, property or credits," on a specified date.

The bottom portion of the document further warned:

NOTICE TO PERSON SERVED: If you refuse or without sufficient excuse neglect to obey this Order, you may be punished for contempt.

This portion of the document also stated, in boldface, upper-case letters, "YOU ARE ORDERED TO APPEAR IN PERSON," and bore the signature of a judge.

The DC/CV 33 document similarly listed the court's name and address, the case number, and the parties' names at the top of the document. The middle portion of the form was titled "Request for Show Cause Order for Contempt." The bottom portion of the document prominently was labeled, "Show Cause Order for

11

Contempt," and stated that Ramsay was "ordered . . . [to] appear in person before this Court . . . to show cause why this Court should not find [her] in contempt for refusing or failing to respond." This portion of the document also bore the signature of a judge, and warned the recipient that "[i]f you fail to appear, an order may be issued resulting in your arrest and you may be found in contempt of court."

Upon consideration of all the language on each of these two documents, we conclude that the stamped language did not reasonably render either document deceptive or misleading, within the meaning of Section 1692e, to a least sophisticated consumer. As noted above, both documents plainly stated that they were orders of the court, and set forth both the name of the court and the signature of a judge. The orders directed Ramsay to appear in court in person on a specified date, and explicitly stated the potential penalties for failing to do so, including being held in contempt of court and being subject to arrest. Thus, such a consumer would not reasonably have been deceived regarding the fact that the documents were court orders requiring the consumer to appear in court.

The presence of the stamped language did not alter these clear representations that the documents were issued by a court and required compliance with the court's directives. The stamped language appeared on the form below the name of the

12

court, the case number, and the parties, and did not conceal or
obscure any text of either document or suggest that Ramsay could
ignore the remainder of the documents and their contents.    Nor
did the stamped language offer any information contrary to that
contained in the documents.    In fact, the stamped language was
consistent with the overall message of the court orders, namely,
that Sawyer and Tapper sought to compel Ramsay's attendance at a
debt collection proceeding.     While the FDCPA protects the
uninformed consumer, courts nevertheless "presum[e] a basic
level of understanding and willingness to read with care."
Nat'l Fin. Servs., 98 F.3d at 136 (citation omitted).

     We also disagree with Ramsay's alternative contention that
the stamped language employed by Tapper was "false" because the
documents were court orders, rather than communications from a
debt collector.   Maryland district court procedures require that
a creditor, as the plaintiff in a collection proceeding,
complete the top portion of the DC/CV 32 and 33 forms, including
listing the creditor and debtor, before submitting the document
for entry as a court order.   Tapper placed the stamped language
on the portion of the documents that he was required to
complete, and served Ramsay with a copy of each court order.
Tapper's representation that the orders were "communications
from a debt collector" was not false because he originated the
communications by supplying the necessary information and taking

13

steps to ensure that the orders were entered by the court.[4]    We
therefore hold that the district court properly dismissed the
Section 1692e claim against Tapper under Rule 12(b)(6).[5]

IV.

For these reasons, we affirm the district court's judgment
dismissing Ramsay's complaint.[6]

AFFIRMED

---

[4] We find no merit in Ramsay's contention that the court
orders were "formal pleadings" exempt from the disclosure
requirement of Section 1692e(11) and that, therefore, the
disclosure requirement was inapplicable on this basis.
Additionally, to the extent that Ramsay argues that Tapper
disclosed more than was required by the statute for subsequent
communications with a consumer, we conclude that any extra
language was mere surplusage that did not render the court
orders false, deceptive, or misleading.

[5] Ramsay also asserts that Tapper violated Section 1692f of
the FDCPA, which prohibits a debt collector from "us[ing] unfair
or unconscionable means to collect or attempt to collect any
debt."    She maintains that Tapper's collection efforts were
unconscionable because they are contrary to the "strong public
policy against imprisonment for debt."    However, Ramsay has
forfeited this claim by failing to raise it in her complaint in
the district court.    See Wood v. Crane Co., 764 F.3d 316, 326
(4th Cir. 2014).

[6] In light of our decision affirming the district court's
dismissal of Ramsay's federal claims, we conclude that the court
did not abuse its discretion in declining to exercise
supplemental jurisdiction over the remaining state law claims.
See 28 U.S.C. § 1367(c)(3); Shanaghan v. Cahill, 58 F.3d 106,
110 (4th Cir. 1995).    We therefore affirm the court's dismissal
of those claims without prejudice.

14

GREGORY, Circuit Judge, dissenting in part:

I agree with the majority that Sawyer cannot be liable under the FDCPA because the debt it obtained was not yet in default. But I believe that Ramsay's complaint plausibly alleges that the language stamped by Tapper on the court orders was false, misleading, or deceptive. See 15 U.S.C. § 1692e. I therefore respectfully dissent in part.

The material facts are these:

1) The underlying document in question was a court order, representing a direct communication from the court to a debtor.

2) A debt collector affixed the following statement near the top of the order: THIS COMMUNICATION IS FROM A DEBT COLLECTOR. IT IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

Under the FDCPA, Ramsay need not prove "an intentional or knowing violation on the part of the debt collector to recover damages[.]" Russell v. Absolute Collection Servs., Inc., 763 F.3d 385, 389 (4th Cir. 2014). She need only show that the message misstated or at the very least sowed confusion about the nature and/or source of the document.

To that end, Sawyer has plausibly alleged that the stamp was deceptive or misleading to the least sophisticated consumer. See United States v. Nat'l Fin. Servs., Inc., 98 F.3d 131, 136 (4th Cir. 1996) (observing that the "least-sophisticated-consumer standard" protects "the gullible as well as the

15

shrewd") (quoting <u>Clomon v. Jackson</u>, 988 F.2d 1314, 1318 (2d Cir. 1993)). The least sophisticated consumer is not well-versed in legal language, forms, and formalities. When a conspicuous statement appears on the top of a document and declares it is "from a debt collector," a gullible consumer will likely believe the message, or at least be puzzled by it. As this case demonstrates, the costs of resulting consumer inaction are severe, including arrest, detention, and the collateral consequences that follow.

Tapper's stamped language is also plainly false. The majority opinion avers that the stamp is accurate because Tapper "originated the communications by supplying the necessary information and taking steps to ensure that the orders were entered by the court." Regardless of whether Tapper had to fill out information on the forms, a court order signed by a judge is not a communication between a debt collector and consumer as understood by the FDCPA. Instead, a court order is expressly a communication between the court and debtor, directing the debtor to appear or perform some action. <u>See</u> <u>Black's Law Dictionary</u> 1123 (7th ed. 1999) (defining "order" as "[a] written direction or command delivered by a court or judge"); <u>Sayyed v. Wolpoff & Abramson</u>, 485 F.3d 226, 229-30 (4th Cir. 2007) (relying on the plain meaning of the FDCPA to interpret its terms). Tapper

cites nothing in the statutory text or legislative history to suggest otherwise.

It is true that this Court has left open the question whether certain types of legal forms like interrogatories served by debt collectors are communications that require disclosure language similar to Tapper's stamp under 15 U.S.C. § 1692e(11). See Sayyed, 485 F.3d at 235 n.2. An interrogatory, however, is a different legal species than a court order. An interrogatory is a set of written questions prepared by a party and submitted to any opposing party in a lawsuit as part of discovery. See Fed. R. Civ. P. 33. An order, by contrast, is a command directly from the court. Nothing in the statutory text of the FDCPA, or legislative history cited by the parties, suggests that an order could be considered a communication from a debt collector triggering the disclosure requirement.

A debt collector who violates the Act's terms in good faith can nonetheless prevail, but it bears the burden to prove the affirmative defense that "(1) it unintentionally violated the FDCPA; (2) the violation resulted from a bona fide error; and (3) it maintained procedures reasonably adapted to avoid the violation." Russell, 763 F.3d at 389 (citing 15 U.S.C. § 1692k(c)). Had the district court denied the motion to dismiss, as I believe was the proper course of action, such a defense would have remained available to Tapper.

17

For these reasons, I respectfully dissent.

FILED: December 9, 2014

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No.   13-1795,      Kharyn Ramsay v. Sawyer Property Management of
                    1:12-cv-02741-RDB

_____

NOTICE OF JUDGMENT
_____

Judgment was entered on this date in accordance with Fed. R. App. P. 36. Please be advised of the following time periods:

**PETITION FOR WRIT OF CERTIORARI:** To be timely, a petition for certiorari must be filed in the United States Supreme Court within 90 days of this court's entry of judgment. The time does not run from issuance of the mandate. If a petition for panel or en banc rehearing is timely filed, the time runs from denial of that petition. Review on writ of certiorari is not a matter of right, but of judicial discretion, and will be granted only for compelling reasons. (www.supremecourt.gov)

**VOUCHERS FOR PAYMENT OF APPOINTED OR ASSIGNED COUNSEL:** Vouchers are sent to counsel appointed or assigned by the court in a separate transmission at the time judgment is entered. CJA 30 vouchers are sent to counsel in capital cases. CJA 20 vouchers are sent to counsel in criminal, post-judgment, habeas, and § 2255 cases. Assigned counsel vouchers are sent to counsel in civil, civil rights, and agency cases. Vouchers should be completed and returned within 60 days of the later of entry of judgment, denial of a petition for rehearing, or the grant or denial of a petition for writ of certiorari. If counsel appointed or assigned by the court did not receive a voucher, forms and instructions are available from the court's web site, www.ca4.uscourts.gov, or from the clerk's office.

**BILL OF COSTS:** A party to whom costs are allowable, who desires taxation of costs, shall file a Bill of Costs within 14 calendar days of entry of judgment. (FRAP 39, Loc. R. 39(b)).

**PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC:** A petition for rehearing must be filed within 14 calendar days after entry of judgment, except that in civil cases in which the United States or its officer or agency is a party, the petition must be filed within 45 days after entry of judgment. A petition for rehearing en banc must be filed within the same time limits and in the same document as the petition for rehearing and must be clearly identified in the title. The only grounds for an extension of time to file a petition for rehearing are the death or serious illness of counsel or a family member (or of a party or family member in pro se cases) or an extraordinary circumstance wholly beyond the control of counsel or a party proceeding without counsel.

Each case number to which the petition applies must be listed on the petition to identify the cases to which the petition applies and to avoid companion cases proceeding to mandate during the pendency of a petition for rehearing in the lead case. A timely filed petition for rehearing or petition for rehearing en banc stays the mandate and tolls the running of time for filing a petition for writ of certiorari.

A petition for rehearing must contain an introduction stating that, in counsel's judgment, one or more of the following situations exist: (1) a material factual or legal matter was overlooked; (2) a change in the law occurred after submission of the case and was overlooked; (3) the opinion conflicts with a decision of the U.S. Supreme Court, this court, or another court of appeals, and the conflict was not addressed; or (4) the case involves one or more questions of exceptional importance. A petition for rehearing, with or without a petition for rehearing en banc, may not exceed 15 pages. Copies are not required unless requested by the court. (FRAP 35 & 40, Loc. R. 40(c)).

**MANDATE:** In original proceedings before this court, there is no mandate. Unless the court shortens or extends the time, in all other cases, the mandate issues 7 days after the expiration of the time for filing a petition for rehearing. A timely petition for rehearing, petition for rehearing en banc, or motion to stay the mandate will stay issuance of the mandate. If the petition or motion is denied, the mandate will issue 7 days later. A motion to stay the mandate will ordinarily be denied, unless the motion presents a substantial question or otherwise sets forth good or probable cause for a stay. (FRAP 41, Loc. R. 41).